Mona Adele ERWIN, Plaintiff,

v.

SECRETARY OF HEALTH, EDU-
CATION AND WELFARE,
Defendant.

Civ. No. 1410–68.

United States District Court,
D. New Jersey.

April 28, 1970.

180

Mona Adele Erwin, pro se.

Frederick B. Lacey, U. S. Atty., by Don Allen Resnikoff, Asst. U. S. Atty., Newark, N. J., for defendant.

## MEMORANDUM and ORDER

SHAW, District Judge.

This action is brought by plaintiff pursuant to 42 U.S.C. § 405(g) to review a final decision of the Secretary of Health, Education and Welfare whereby plaintiff's application for disability insurance benefits was denied.

Plaintiff filed her application on April 18, 1967, alleging onset of disability during September 1962 at age forty-six. She described her disability as a "bladder condition—nerves in the lower spine." It was determined by the Hearing Examiner in the Bureau that the latest date on which plaintiff met the statutory earning status requirement for disability was September 30, 1962, and further that the evidence submitted established that the disability of which she complained (bladder condition) ceased during February of 1966 and that, therefore, her application was filed more than twelve months after cessation of disability. See 42 U.S.C. § 416(i) (2) (D) (E) [1]. The two month grace period prescribed by subsection (D) does not seem to have been considered. Before plaintiff could qualify for disability benefits,

[1]. (E) * * * no application for a disability determination which is filed more than 12 months after the month prescribed by subparagraph (D) as the month in which the period of disability ends (determined without regard to subparagraph (B) and this subparagraph) shall be accepted as an application for purposes of this paragraph.

(D) A period of disability shall end with the close of whichever of the following months is the earlier: (i) the month preceding the month in which the individual attains age 65, or (ii) the second month following the month in which the disability ceases.

it was incumbent upon her to establish the existence of "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 416 (i) (1) (A).

■■ The narrow function of the reviewing Court is confined to the question of whether there was any substantial evidence which would support the findings of the Secretary. Review is upon the record developed during the proceedings in the administrative agency leading to the final decision. "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Even though the Court may have reached different conclusions on the same evidence, the Court is not at liberty to substitute its findings of fact for those of the Secretary where they have rational support in the evidence. Ogden v. Celebrezze, 211 F.Supp. 558 (D.N.J.1962); Palmer v. Celebrezze, 334 F.2d 306 (3rd Cir. 1964).

■ Before the plaintiff could qualify for disability insurance benefits as defined by the Act, it must be shown that the disability existed on or before the date of expiration of insured status under the Act. Brandon v. Gardner, 377 F.2d 488 (4th Cir. 1967); 42 U.S.C. §§ 416(i) (3) (B), 423(c) (1) (B). The insured status of plaintiff did not exist beyond September 30, 1962, when she last met the earnings requirements. Accordingly, it was incumbent upon her to establish onset of disability as defined by the Act on or prior to that date.

Plaintiff is a high school graduate. She took a commercial course which included the subjects of typing, stenography and bookkeeping. During the latter years of her employment she worked as a bookkeeper. She stopped work during 1957 or 1958 (she could not recall exactly which year it was). She attributed her inability to work to colitis which cleared up in approximately six months. Her former employer was out of business but she did find work and "worked a couple of weeks or about a month." Thereafter she received unemployment benefits and did not return to work. During the latter part of August 1962 she experienced pressure in her bladder and sought treatment from Dr. Mallison, a general practitioner. He treated her with pills thinking that she had an infection. The pills were not effective and Dr. Mallison referred her to a urologist, Dr. Boyes. He took a urine specimen and gave her pills. She had no relief and Dr. Mallison referred her to another urologist, Dr. Ferenchak. Mrs. Erwin saw him on or about September 5, 1962. He told her that she had a stricture of the urethra and he performed a dilation. He continued the dilations through September 1962 until the end of October 1962. This relieved the pressure but frequency of urination continued with soreness in the vaginal area. She stated that she did not look for employment becaue she did not feel well. She never questioned Dr. Ferenchak about her ability to go to work. Neither did she discuss this with Dr. Mallison. She saw Dr. Keating, a gynecologist, during January 1963 because of her complaint of soreness in the vaginal area. According to her testimony, Dr. Keating advised her that there was nothing wrong in the vaginal area, but he noticed that she had a lump on her neck and advised her to see a surgeon about it immediately. She did this and an operation was performed to remove a tumer from her thyroid. This was completely unrelated to any bladder condition.

She did not seek further treatment for the bladder trouble until approximately March of 1963 when she returned to Dr. Ferenchak. He continued her on pills but she experienced no relief. During June 1963 he performed a cystoscopy but continued her on the pills. According to plaintiff her condition with pressure and frequency was unbearable because of pain. Her husband called a general practitioner, Dr. Milligan, who saw her once,

for the bladder condition. He gave her pills to relieve her nerves. Thereafter, he recommended Dr. Day, a urologist. She saw Dr. Day approximately one week after she had discussed her difficulties with Dr. Ferenchak who, it seems, had reached the conclusion that there was nothing seriously wrong with her.

Dr. Day placed her in Overlook Hospital for another cystoscopy. This occurred during June 1363. Dr. Day reported that he did find granulated tissue in the bladder which he removed. Consultation and treatment by Dr. Day for the bladder condition was continued. According to plaintiff she felt some relief after Dr. Day took the tissue out but several months later she had the sensation of pressure again. Dr. Day treated her with pills and dilations and finally told he he did not know just what to do.

During 1964 he placed her in the hospital and another cystoscopy was performed as well as an examination by a gynecologist and an internist. It seems that the doctors found nothing in connection with the bladder except some infection for which more pills were prescribed and silver nitrate treatments administered. Plaintiff found the silver nitrate treatments very painful. She was finally advised that she might have Hunner's ulcer in her bladder and it was recommended that she go to the Albany Medical Center. She was hospitalized there on January 6, 1966. Another cystoscopy was done and thereafter a laminectomy was performed. Excerpts from the summary sheet of the Albany Medical Center read as follows:

This 45 year old female was admitted on January 6, 1966, with the chief complaint of frequency every 5–20 minutes, and sensation of pressure in the suprapublic area of three years' duration.

Present illness: The patient has had several admissions to various hospitals for the same symptoms. She has had a cystoscopy, urethral dilation, bladder dilation and instillation of sodium silver nitrate. She had no history of costovertebral angle pain or acute urinary tract infection. The patient had been on sulfa and antibiotics.

Review of systems: Non contributory. Physical examination: This was a well nourished, obese female in no acute distress. The general examination was within normal limits. The impression at the time of admission were interstitial cystitis.

The patient was admitted for dilation and evaluation. Cystoscopy revealed areas of hemorrhage just inside the vesical neck characteristic of submucosal cystitis.

The patient was seen by Dr. Schilp who thought that a sacral neurotomy would help the patient. Neurological examination revealed some weakness when patient attempted to raise herself from a squatting position, was otherwise normal.

After the operation plaintiff's urological difficulties seem to have been minimized but she now suffers acute pain from the residuals of the back operation. She is unable to sit for any appreciable period of time and has to sit on something soft to alleviate pain at the tip of her spine. In fact, the back problem became so serious that paralysis of the nerves was considered. It would seem that the laminectomy was performed because of the complaints of the bladder condition but the medical causal relationship is not entirely clear from the record.

According to plaintiff she never had any trouble with her back before the laminectomy. It was the opinion of Dr. Liss that her pain in the back was due to the fact that nerve ends are caught in scar tissue and it was his opinion that the only thing that he could do would be an operation that would make plaintiff numb from the waist down as a result of which she would lose control of her bowels and bladder. There seems to be no doubt that plaintiff has suffered from increased disability since 1966 as the result of the laminectomy. Prior to the operation plaintiff could drive an auto-

mobile for a limited distance but present pain in her back now precludes this. She also has difficulty performing the limited functions that she was able to perform before the back operation.

She was examined by Dr. Goldstein, a urologist chosen by the New Jersey State Disability Service. He found that there were no urologic symptoms but that all of her symptoms are referrable to her back and date from the neurological operation which she had. The symptoms are relieved when she sits in a soft chair or on a rubber ring.

Dr. Ferenchak, reporting as to the time when he was treating her, stated, "There is no urological basis for disability."

The medical history leaves much to be desired. Giving credence to plaintiff's persistent complaints of bladder pressure and frequency with no continuing relief from pain by medical attention until the operation in Albany which it seems eliminated one problem and created another of more alarming consequence in terms of disability. The conclusion is inescapable that early medical diagnosis was not accurate and when, if ever, it attained something more than highly speculative opinion is open to doubt. The only factor which seems to indicate that the laminectomy reached the core of the bladder problem is the fact that the bladder pressure subsided and urologic symptoms were diminished.

The underlying factual elements in support of the opinion of Dr. Ferenchak that there was no urological basis for disability are left open to speculation. If he concluded that there was no serious impairment of function of plaintiff's bladder, the validity of such conclusion seems to be dispelled by subsequent history and medical findings. If, on the other hand, his opinion was based upon a conclusion that while plaintiff was suffering from a urological disorder, it was not of such acute nature as to cause disability, then he must necessarily have discounted plaintiff's subjective complaints. The prolonged history of medical treatment and repeated hospitalization in the search for relief tend to lend credence to plaintiff's complaints of constantly recurring pain and distress. Dr. Ferenchak was the only specialist in urology who treated plaintiff during the critical period when disability, if it existed, had to be established and that fact in the usual case would permit the inference that greater probative value should be given to his opinion. But in this particular case the probative value of his opinion cannot be considered in complete isolation from subsequent medical history. Thus considered, the inference is permissible that he did not find and never knew all the underlying organic causes of plaintiff's distress. Dr. Ferenchak found the existence of a severe urethral stricture and accomplished some relief by a series of urethral dilations. Subsequent hospitalization at the instance of Dr. Day, a urologist, who placed plaintiff in Overlook Hospital, disclosed granular tissue in the bladder which was removed and at that time there was a diagnosis of cystitis and pyelonephritis. Dr. Day, a qualified urologist, treated plaintiff from June 1963 to April 24, 1967. His report of his final findings, as set forth in the record read as follows:

51 year old white female first seen in 1963

Cystoscopy revealed cystitis urethritis and vesicle neck hypertrophy.

Transurethral resection of vesicle neck was done, patient continued to complain of sysuria (sic) and marked frequency. Treated with medication, dilation and silver nitrate bladder treatment.

June 1965 internal urethrotomy was done. Patient stated she had no improvement and went to Albany New York for further surgery. A sacral phigotomy (sic) at S2 and S3 was done with still no improvement.

Cystoscopy revealed cystitis and urethritis; retrograde revealed bilateral calceal blunting.

Diagnoisis: 1. Cystitis, 2. urethritis, 3. pyelonephritis.

Plaintiff sought to supplement the record here by medical reports of Dr. Edgar M. Housepian, a neurologist, dated November 8, 1968; a further report by Dr. Day dated December 7, 1968; a report of Dr. Hubert L. Rosomoff dated October 1, 1968; and a report of Dr. Norman Rosenberg dated December 26, 1968.

Since the function of fact finding rests with the administrative agency, these reports would be more appropriately evaluated there. The report of Dr. Housepian seems to be significant by way of relating the interstitial cystitis to the surgery at the Albany Medical Center. Comments on plaintiff's present condition and of the background history leading to the laminectomy are also enlightening. Dr. Day's supplemental report indicates persistent symptoms since June 1963 and attached to the history of treatment is a further report by Dr. Day that as of September 1963 plaintiff was unable to work with her urologic problem. The report of Dr. Liss and the report of Dr. Rosomoff also shed some light upon the history of symptoms and extent of disability. The same is true of the report of Dr. Rosenberg.

It is true that the supplemental reports tendered to the Court are, in some respects, repetitious of what has been developed in the record before the Hearing Examiner, but the more detailed medical history could be significant in filling some of the gaps left open in the record.

■ While it seems to be established that the operation at the Albany Medical Center did afford a substantial degree of relief from the bladder disorder, there is a serious question as to the effect of the residual disability from a spinal condition which followed the operation. If it were demonstrated by substantial evidence that plaintiff was unable by reason of disability to engage in any substantial gainful employment during September and October of 1962 and that such disability persisted from organic causes up to the time of the laminectomy, then she would be entitled to insurance benefits. The fact that urologic symptoms were relieved would not be a determinative factor where, as here, a continuing disability was the result of an attempt to eliminate the initial causes. Where treatment to remove disability, no matter how well advised or medically indicated, has the unfortunate result of aggravating the preexisting disability, or at best substantially removing one cause and bringing another into being, it is not reasonable to say that clearing up a bladder condition terminates eligibility for disability benefits. The continuance of disability, whatever the cause, is the test. If inability to engage in any substantial gainful employment began on or before September 30, 1962, and has persisted since that time, plaintiff, upon proof thereof, is entitled to a period of disability under the Act.

■ Dr. Ferenchak's opinion that there was no urological basis for disability during the time that he was treating plaintiff might be considered substantial evidence that the Hearing Examiner could accept in reaching the conclusion that plaintiff did not suffer from inability to engage in any substantial gainful employment on or prior to September 30, 1962, if such opinion were attended by an accurate diagnosis of the organic causes of plaintiff's continuing pain and distress and particularly if the opinion was consistent with subsequent medical developments. The naked opinion without any underlying reason to discredit plaintiff's complaints of persistent distress is not persuasive and does not, in the opinion of this Court, constitute substantial evidence.

■ The decision in this case has not been reached without difficulty. As previously stated, the record here leaves much to be desired. Plaintiff was not represented by counsel in the adminis-

trative proceedings or in this Court. She was not denied the right to counsel. In fact, she was invited by the Hearing Examiner to have counsel represent her if she desired. There, as here, she chose no to be represented by counsel. In a close case of this kind that placed her at a disadvantage. This circumstance requires the Court to scrutinize the record with care to detect the inadvertent absence of probable relevant evidence which might defeat a just cause. The Hearing Examiner did his utmost to assist plaintiff, particularly in the matter of obtaining all relevant medical information and developing a chronologic sequence of her symptoms. She did not seem to be able to fully cooperate, particularly with respect to recollection of dates and periods of disabling pain. This is quite understandable on the part of a person processing her claim *pro se* without advance knowledge of the significance of accurate chronologic sequence of periods of distressing pain and frequency of medical treatments. Medical reports do not detail the dates and number of visits for treatment. It may well be that she will not be able to improve the record, but it is the feeling of the Court that she should have further opportunity to do so if she can. There are substantial periods of time where the record is silent as to the existence of disabling pain and distress and, if such symptoms were only of short duration followed by substantial intervals of relief, then her ability to engage in some substantial gainful employment may very well be indicated. On the other hand, it may not be difficult to infer that one who suffers recurrently from bladder pressure and unusual frequency of urination with only brief intervals of minor relief could not be productive in any substantial gainful employment or likely to obtain the same. The level of tolerance to afflictions varies with individuals and even if an organic condition with which plaintiff was afflicted might not have sufficient impact upon the nervous system of some individuals as to preclude

effort to work, it could have had sufficient effect upon plaintiff. This is not to suggest that any self-serving declarations of plaintiff must be taken at face value. Her complaints must be medically evaluated and it is in the medical field that the validity of the subjective complaints must be assessed in reaching the conclusion that there is or is not "a *medically* determinable physical or mental impairment" or a combination of both which precludes ability to engage in any substantial gainful activity.

A complete and detailed history of complaints together with all medical attention and treatment is essential in a case of this kind to determine the precise nature of any initial disability and the continuity thereof over a period of time. The record discloses that the Hearing Examiner tried patiently and persistently to guide plaintiff in the production of all relevant evidence. She had a fair hearing with full opportunity to present any evidence that she felt had any significance in evaluating disability. But without the guiding hand of counsel she labored under a handicap. In a case of this kind where a layman proceeds *pro se*, a greater burden is cast upon the administrative agency as well as the Court to assure that the handicap of presenting evidence without assistance of counsel does not obscure pertinent relevant facts which, if produced, might affect the end result. Inability to employ counsel must not be permitted to defeat the just disposition of any case. Accordingly, in a case of this kind it is felt by the Court that if a more complete and informative record over the years of plaintiff's alleged disability is established and considered, she will then have had her full day in court without impairment of the ultimate just disposition of her claim by virtue of her ignorance of the law and inability to retain counsel. This is not to suggest that the Court is indicating that a more complete record should result in a decision in her favor. The suggestion is nothing more than that

upon final disposition of her claim, whether in her favor or not, no relevant fact, favorable or unfavorable to her claim, has been omitted and not considered.

The conclusion reached by the Court is that this matter should be remanded to the Secretary pursuant to the provisions of 42 U.S.C. § 405(g) for further hearing at which plaintiff shall have the opportunity to submit all relevant medical or other evidence relating to her alleged disability that has not heretofore been made a part of the record. She should also have the opportunity to submit more detailed medical reports of doctors who attended her to the extent that it may be possible to obtain such. All additional evidence shall be considered together with that which has been made a matter of record and findings of fact and conclusions of law shall be made thereon.

Nothing herein contained shall be construed as an opinion by this Court by way of suggestion or otherwise that she is or is not entitled to disability benefits. The initial decision on that rests entirely with the Secretary. The Court merely holds that plaintiff should be afforded the opportunity to submit such additional relevant evidence as she desires and have the same considered.

Accordingly, it is on this 28th day of April, 1970, ordered that this matter be remanded to the Secretary to receive such additional relevant evidence, medical or otherwise, as plaintiff may offer in support of her claim with direction that such evidence be considered together with that which has been submitted and that findings of fact and conclusions of law be made thereon.

Further ordered that the medical reports tendered to this Court with plaintiff's letter of transmittal be deemed relevant evidence which the Secretary shall receive and consider for the purpose of reconsideration of the final decision heretofore entered.