**Phyllis J. JOZEFICK, Plaintiff,**

v.

**Donna L. SHALALA, Secretary of the United States Department of Health and Human Services, Defendant.**

**Civ. A. No CV–93–0219.**

United States District Court, M.D. Pennsylvania.

April 20, 1994.

Douglas W. Reed, Pittsburgh, PA, for plaintiff.

Joseph J. Terz, Asst. U.S. Atty., Harrisburg, PA, for defendant.

## MEMORANDUM

VANASKIE, District Judge.

"To arrive at a consensus on the priority to be afforded the matters entrusted to the jurisdiction of the federal courts might be difficult indeed, but few would dispute the premise that claims of those entitled to disability benefits from the Social Security Administration must rank high on the scale of human concern." *Hess v. Secretary of Health, Education & Welfare,* 497 F.2d 837, 838 (3rd Cir.1974). Judicial review in such cases, although necessarily deferential to the agency's determination, must nonetheless be undertaken with a recognition that the "beneficent purposes" underlying the Social Se-

curity Act, *id.* at 840, are best served by insuring that the agency has developed a complete evidentiary record. *See Dobrowolsky v. Califano,* 606 F.2d 403, 406–07 (3rd Cir.1979).

■ When, as in this case, a claimant proceeds to a hearing before an Administrative Law Judge ("ALJ") without assistance of counsel, the ALJ has an obligation " 'scrupulously and conscientiously [to] probe into, inquire of, and explore all relevant facts....' " *Smith v. Secretary of Health, Education and Welfare,* 587 F.2d 857, 860 (7th Cir.1978). *Accord, Smith v. Harris,* 644 F.2d 985, 989 (3rd Cir.1981). Absence of counsel at the administrative hearing not only increases the responsibility of the ALJ, but also requires the court to undertake a searching review of the record to determine that the claimant has received a full and fair hearing. *See Brittingham v. Weinberger,* 408 F.Supp. 606, 611 (E.D.Pa.1976).

A careful review of the record in this case suggests significant evidentiary gaps that the ALJ failed to explore. Accordingly, since it cannot be said that plaintiff Phyllis J. Jozefick ("Jozefick") received a "full and fair" hearing, this matter will be remanded to the Secretary of the Department of Health and Human Services (the "Secretary") for further proceedings consistent with this opinion.

## I. BACKGROUND

### A.

Jozefick filed her application for disability insurance benefits on April 9, 1991. (Record of Proceedings of the Social Security Administration ("R.") at 82–84.) Her claim presented the difficult challenge of determining whether her rheumatoid arthritis rendered her unable to engage in gainful employment prior to the expiration of her insured status on January 1, 1982, almost ten years before she filed her first application for benefits. (R. 95–98.)[1] Jozefick's application was denied on May 21, 1991. (R. 85–87.)

She sought reconsideration on the ground that "Dr. W.H. Dreibelbis was not contacted. He was my doctor when [I] was last insured for disability." (R. 88.) The request for reconsideration was denied on June 24, 1991. (R. 90–91.)

Jozefick timely requested an administrative hearing before an ALJ, once again explaining that "the physician who treated me before the date I was last insured (12/31/81) was not contacted." (R. 92.) She once again provided the name of the physician who had attend to her arthritic condition prior to 1982, as well as the physician's address, and telephone number. (R. 92.)

A hearing was conducted by the ALJ on November 20, 1991. Jozefick appeared *pro se.* Only she and her husband testified. Her testimony was marked by repeated interruptions by her husband. The ALJ permitted these interruptions apparently to develop a more complete record.

### B.

The record indicates that plaintiff was born on February 10, 1952. (R. 82.) During the 1970's she had worked on a production line taping wires. (R. 47–48.) Her job required her to sit for extended periods of time and to handle small parts and tools. (R. 72.) She quit working in the spring of 1979 because of pain in her hands, back, neck and knees. (R. 48–49, 59, 61.) She explained that when she quit her job she was unable to lift pots or pans from a stove without dislocating the joints in her fingers. (R. 67, 71–72.) Whenever she worked her legs and feet became swollen. (R. 69.)

Jozefick testified that her treating physician at that time was Dr. Dreibelbis. (R. 54.)[2] Initially, Dr. Dreibelbis prescribed "large amounts of aspirin, then ... Motrin, and then ... larger doses of Motrin...." (R. 55.) She explained that she did not obtain relief from these medications but that Dr. Dreibelbis "wouldn't give me anything

---

1. There appears to be little doubt that Jozefick is currently disabled. At her hearing, the ALJ observed that "apparently at this point she's probably not going to be able to work...." (R. 73.)

2. The transcript of the ALJ hearing refers to Dr. Dreibelbis as "Dr. DeBalbis." For sake of clarity, "Dr. DeBalbis" has been changed to "Dr. Dreibelbis" whenever a direct quote is taken from the hearing transcript.

stronger because he said it would just keep getting worse." (R. 55.)

## C.

When the ALJ undertook a colloquy to ascertain whether Mrs. Jozefick knowingly waived her right to counsel at the hearing, Mr. and Mrs. Jozefick discussed their inability to obtain medical records from Dr. Dreibelbis. (R. 32–35.) In continuing his colloquy on the waiver of counsel issue, the ALJ observed:

Now, I would say those records [of Dr. Dreibelbis] are quite important in your case. But all I can tell you is that I can have a request, after our hearing today I can send a request back to the disability office and I can have them ask, try again. Go after Mr., Dr. Dreibelbis and try to get records.

Of course if he has destroyed the records, I don't know, if he refuses then I can send a subpoena to him. We can do those things if necessary. [R. 38.]

When the ALJ asked whether an attorney was believed to be necessary, Mr. Jozefick responded by inquiring, "if I ... can't get [Dr. Dreibelbis' records] and she can't get them how would a lawyer get" them. (R. 40.) Mr. Jozefick later noted that "the only evidence I can get [from Dr. Dreibelbis] is that piece of paper there," apparently referring to a handwritten note, purportedly signed by Dr. Dreibelbis, which read:

To Whom It May Concern: This is to certify that [Phyliss Jozefick] was treated for rheumatoid arthritis in 1980. Also hypertension. Haven't seen her for about 10 years. [R. 189.]

The ALJ again indicated that additional efforts to obtain Dr. Dreibelbis' records would be undertaken after the hearing. (R. 42, 43.) The following exchange then occurred:

ALJ: So to get to first base we need to decide if we need to go ahead with the hearing without an attorney or whether you want to have an attorney.

Mr. Jozefick: No, I want to go without an attorney, if that— [R. 43.][3]

At the conclusion of the hearing, the ALJ stated that the record would remain open for thirty (30) days, during which time Dr. Dreibelbis' office would be contacted. (R. 74, 75, 77.) At that point, Mr. Jozefick asked whether Dr. Dreibelbis and Dr. Adams, by whom Mrs. Jozefick had been treated in the mid–1980's, could be compelled to appear to testify on behalf of Mrs. Jozefick. (R. 77–79.) The ALJ responded by stating that he would treat this question as a motion and that he was "going to take that under advisement and I'll let you know what I think about it later on." (R. 80.)

## D.

The ALJ issued his decision on April 17, 1992. (R. 16–24.) There is no evidence in the record that following the hearing the ALJ undertook to contact Dr. Dreibelbis' office. There is also no indication that the ALJ ruled upon the oral request, which he deemed to be a motion, to issue subpoenas to compel Drs. Dreibelbis and Adams to testify. In his written decision, the ALJ stated that "[a]s Dr. Dreibelbis has not seen claimant in over ten years, prescribed no prescription medication (Exhibit 8 p. 2) and has no records, any further efforts to obtain records are considered futile." (R. 20.)[4]

In his "Evaluation of the Evidence," the ALJ followed the five-step process described in *Sullivan v. Zebley,* 493 U.S. 521, 525, 110 S.Ct. 885, 888–89, 107 L.Ed.2d 967 (1990). He concluded that because Jozefick had "not worked since alleging disability commencing April 30, 1979," the first inquiry was resolved in her favor. (R. 17.) At step two, the ALJ found that the impairments resulting from

3. The transcript does not indicate what qualification to the decision to proceed without an attorney was intended by *Mr.* Jozefick. Unfortunately, *Mrs.* Jozefick did not explicitly state that she, as the claimant, wished to proceed without assistance of counsel.

4. In asserting that Dr. Dreibelbis did not have records pertaining to the claimant, the ALJ twice cited an "Exhibit 19." (R. 18, 20.) No description of an "Exhibit 19" was provided in the decision, and the list of exhibits included in the certified record of the Social Security proceeding, (R. 1), does not include an Exhibit 19.

Jozefick's arthritic condition were "severe" within the purview of the Social Security Act.

The ALJ then addressed the question of whether Jozefick's impairment met the criteria for a "listed impairment," *i.e.*, a condition "considered severe enough to prevent a person from doing any gainful activity." 20 C.F.R. § 404.1525(a) (1993). The "Listing of Impairments" includes "[a]ctive rheumatoid arthritis and other inflammatory arthritis." App. 1 to subpart P, part 404 of Social Security Administration Regulations, 20 C.F.R., parts 400 to 499 (1993). The criteria for this listed impairment include a "[h]istory of persistent joint pain, swelling, and tenderness involving multiple major joints"; significant restriction in function of the affected joints; and "[c]orroboration of [the] diagnosis *at some point in time*." *Id.* (emphasis added). Such corroboration may consist of, *inter alia*, "[p]ositive serologic test for rheumatoid factor." *Id.*[5] Referring to the absence of "corroboration of the diagnosis [of rheumatoid arthritis] by conventional methodology" predating January 1, 1982, (R. 18), the ALJ concluded that Jozefick had not met the requirements for a listed impairment.[6]

At step four, the ALJ determined that Jozefick's condition had not precluded her from engaging in her past employment as a production line worker during the pertinent time period. In making this determination, the ALJ relied upon (a) the absence of medical records existing prior to 1982; (b) Jozef-ick's "self-described activities of daily living" during the relevant time period (R. 19); and (c) excerpts from some of the medical records indicating that Mrs. Jozefick's condition had improved somewhat in the mid–1980's. (R. 19–20.)

Assuming, *arguendo*, that Jozefick would have been unable to work in her prior line of employment, the ALJ also proceeded to step five—whether Jozefick was able to engage in any gainful employment. Once again relying upon the absence of "substantial medical evidence for the period prior to the expiration of claimant's date last insured," (R. 20), the ALJ found that Jozefick was able to perform at the "light exertional level." (R. 21.)[7]

Jozefick, with the assistance of counsel, sought review of the ALJ's decision by the Appeals Council. (R. 8–11.) Additional evidence, consisting of reports from the Geisinger Medical Center dated June, 1992 and reports from Dr. Eric D. Newman for the period January through March, 1992, were accepted by the Appeals Council.[8] On December 17, 1992, the Appeals Council denied Jozefick's request for review. (R. 3–4.)[9]

### E.

This action was commenced on February 16, 1993. Jozefick moved for summary judgment or, in the alternative, to remand the matter, (Dkt. Entry # 8), and the Secretary

---

5. It is unclear whether the results for serologic tests obtained after insured status had expired may be used as corroborative evidence of Dr. Dreibelbis' diagnosis of rheumatoid arthritis. The Secretary's Regulations simply require corroboration "at some point in time."

6. Citing Exhibit 17, the ALJ asserted that "it is clear that treatment commenced *after* claimant's onset date." (R. 18; emphasis in original). Exhibit 17 (R. 188) is a handwritten list of medications apparently prescribed for Jozefick, and thus does not support the ALJ's assertion.

7. The ALJ concluded that Jozefick was limited to "light exertional" work, not because of her arthritic condition, but because of her "stature." (R. 21.) Significantly, there was no evidence in the record that plaintiff's "stature" limited her to light exertional work activities.

8. Dr. Newman, identified as an Associate in the Department of Rheumatology at the Geisinger Medical Center, diagnosed Jozefick's condition as "seropositive nodular erosive rheumatoid arthritis." (R. 193.)

9. The Secretary has asserted that Jozefick's attorney failed to raise the absence of counsel issue to the Appeals Council. (Brief in Support of Secretary's Summary Judgment Motion at p. 12.) The Secretary has not cited any authority that Jozefick's failure to raise this issue before the Appeals Council precludes Jozefick from raising it now. In the absence of authority mandating that the issue be raised before the Appeals Council, and taking into account the assertion of Jozefick's attorney that the issue was not made apparent until after the record was transcribed for this case (Jozefick's Reply Brief at p. 5), and given the cogent policy that an unrepresented claimant be assured a full and fair hearing, the Court does not believe that judicial review of this issue is foreclosed by the failure to present it to the Appeals Council.

moved for summary judgment. (Dkt. Entry # 10.) Briefs were filed by the parties, but no evidentiary submissions outside the scope of the administrative record were made.

On February 28, 1994, Magistrate Judge Thomas M. Blewitt, to whom this matter had been referred, filed a Report and Recommendation. (Dkt. Entry # 13.) The bulk of his analysis addressed the issue of whether Jozefick had made a knowing and voluntary waiver of her right to be represented by counsel at the ALJ hearing. The Magistrate Judge concluded that the husband's affirmative response to the question of whether the hearing could proceed without counsel should be construed as a "knowing and voluntary waiver" by Mrs. Jozefick. The Magistrate Judge further concluded that there was no basis for a reversal or remand because Jozefick had "failed to show that a different outcome would have resulted had the plaintiff been represented at the hearing." (Report and Recommendation at p. 7.) He thus recommended that the Secretary's Motion for Summary Judgment be granted. No objections to the Report and Recommendation have been filed.

## II. DISCUSSION

### A.

■ The extent of review of a Magistrate Judge's report is committed to the district court's sound discretion. *See Thomas v. Arn,* 474 U.S. 140, 154, 106 S.Ct. 466, 474, 88 L.Ed.2d 435 (1985); *Goney v. Clark,* 749 F.2d 5, 7 (3d Cir.1984); *Heiser v. Ryan,* 813 F.Supp. 388, 391 (W.D. Pa.1993), *aff'd,* 15 F.3d 299 (3rd Cir.1994). In view of the admonition that the record of a disability determination for an unrepresented claimant be reviewed with a "heightened level of care," *Early v. Heckler,* 743 F.2d 1002, 1008 (3rd Cir.1984), and because it appears that the parties misdirected the Magistrate Judge's attention to the question of whether there was a voluntary waiver of counsel as opposed to whether Jozefick received a full and fair hearing, the Court has considered

the arguments advanced by the parties *de novo.*.

### B.

■ There is no constitutional right to counsel in a social security disability hearing. *See Holland v. Heckler,* 764 F.2d 1560, 1562 (11th Cir.1985) *(per curiam ).* There is, however, a statutory right to be represented by an attorney, *see* 42 U.S.C. § 406; *Clark v. Schweiker,* 652 F.2d 399, 403 (5th Cir.1981), and that right has been implemented by regulation. *See* 20 C.F.R. §§ 404.1700 through 404.1707 (1993).

■ In this case, the parties have vigorously contested the question of whether the husband's assertion that the right to counsel was being waived should be imputed to the wife.[10] But whether Mrs. Jozefick knowingly and voluntarily waived her right to counsel is not dispositive. Even if there is a failure to knowingly and voluntarily waive the right to counsel, the absence of an attorney representative does not necessarily warrant a remand. *See Hess v. Secretary of Health, Education & Welfare,* 497 F.2d 837, 840 n. 4 (3rd Cir.1974). Correspondingly, a knowing and voluntary waiver of counsel does not preclude a remand. *See Clark v. Schweiker,* 652 F.2d 399, 404 (5th Cir.1981); *Walsh v. Heckler,* 608 F.Supp. 500, 501 (E.D.Pa.1985); *Kennedy v. Finch,* 317 F.Supp. 7, 8 (E.D.Pa. 1970). In both instances—where there has been a fully-informed and voluntary waiver of counsel and where the record does not evince such a waiver—the ALJ must exercise a " 'heightened level of care' and 'assume a more active role' in the development of the record." *Smith v. Harris,* 644 F.2d 985, 989 (3rd Cir.1981). *See also Perry v. Secretary of Health and Human Services,* 504 F.Supp. 278, 281 (E.D.N.Y.1980) (ALJ has an affirmative obligation to assist a *pro se* claimant in the development of her case). In both instances, the reviewing court must determine whether there was clear prejudice to the claimant or unfairness in the administrative hearing. *See Dobrowolsky,* 606 F.2d at 407; *Domozik v. Cohen,* 413 F.2d 5, 9 (3rd Cir. 1969).

10. The issue with which the parties grappled would have easily been avoided, of course, by the

ALJ simply insisting upon an answer from the claimant herself.

A hearing may be characterized as "unfair" where the ALJ has failed to discharge his obligation to develop a complete record. *See Livingston v. Califano*, 614 F.2d 342, 345 (3rd Cir.1980). The question is not "whether every question was asked which might have been asked had [the claimant] been represented by an attorney, [but] whether the record reveals evidentiary gaps which result in unfairness or clear prejudice." *Edwards v. Sullivan*, 937 F.2d 580, 585–86 (11th Cir.1991).

In this case, the requisite "searching investigation of the record," *Brittingham v. Weinberger*, 408 F.Supp. 606, 611 (E.D.Pa.1976), discloses such an evidentiary gap. Several times during the course of the hearing the ALJ acknowledged the importance of evidence documenting a diagnosis of rheumatoid arthritis prior to 1982. Several times during the course of the hearing he assured Jozefick that efforts to obtain evidence from Dr. Dreibelbis corroborating such a diagnosis would be renewed. At the close of the hearing, the ALJ took "under advisement" a request to subpoena both Dr. Dreibelbis and Dr. Adams to testify. (R. 80.) He failed to rule on this request. Furthermore, the record does not disclose that any additional efforts were made to obtain evidence from Dr. Dreibelbis. Instead, in his written decision, the ALJ claimed that any additional efforts to secure information from Dr. Dreibelbis would be "futile."

In *Smith v. Harris*, 644 F.2d 985 (3rd Cir.1981), the district court found that the ALJ had failed to give adequate consideration to subjective complaints of pain but declined to remand the matter because the claimant had passed away. In reversing, the Third Circuit observed that a remand would not be "futile" because the ALJ had the power to obtain evidence from third parties, including the claimant's physicians.

In *Perry v. Secretary of Health and Human Services, supra*, the ALJ had rejected as unsupported a handwritten note of the plaintiff's treating physician expressing the opinion that plaintiff was disabled. In re-

manding the matter to the Secretary, the court explained that if the treating physician's report "was material, as appears to be the case, arrangements could have been made to have him appear and testify...." *Id.* at 281. As observed in *Fernandez v. Schweiker*, 650 F.2d 5, 8 (2nd Cir.1981), "where a claimant is unrepresented and plainly unequal to the task of developing her own record, the failure of the administrative judge to 'call witnesses or indicate that she ought to do so' can result in less than a full hearing." *See also Pidgeon v. Health & Human Services*, 493 F.Supp. 1088 (E.D.Mich.1980) (remand warranted where ALJ refused to issue subpoena to enable cross-examination of consulting physician).

In this case, the ALJ had the authority to issue a subpoena to Dr. Dreibelbis and/or Dr. Adams on his own motion. *See* 20 C.F.R. § 404.950(d) (1993).[11] In the absence of records, the testimony of these physicians, especially Dr. Dreibelbis, appears to have been reasonably necessary for a full and fair hearing in this case. Indeed, it appears that Dr. Dreibelbis is the only healthcare provider who could have testified concerning Jozefick's arthritic condition as it existed before 1982. The fact that Dr. Dreibelbis may not have maintained records does not mean that his testimony would be meaningless. It cannot be assumed that he would have no recollection of Jozefick. Nor can it be assumed that testimony from this critical witness would be entitled to little, if any, weight because he did not maintain records.

Jozefick should not be foreclosed from presenting medical evidence of her arthritic condition existing prior to 1982 because her treating physician did not maintain records. Under these circumstances, the ALJ's affirmative obligation to develop the record warranted issuance of a subpoena to Dr. Dreibelbis.

Compounding the unfairness of the ALJ's failure to subpoena Dr. Dreibelbis is his failure to follow up on his assurances that additional efforts to obtain information from Dr.

11. This regulation, in pertinent part, provides: When it is reasonably necessary for the full presentation of a case, an administrative law judge ... may, on his or her own initiative or at the request of a party, issue subpoenas for the appearance and testimony of witnesses....

Dreibelbis would be undertaken and that he would consider issuing a subpoena to require Dr. Dreibelbis and/or Dr. Adams to testify. In *Hess v. Secretary*, 497 F.2d at 841, the Third Circuit found unfairness in the proceeding when the unrepresented claimant believed that the ALJ would obtain additional medical evidence before reaching a decision but the ALJ failed to attempt to obtain such evidence. In this case, Jozefick was clearly justified in believing that efforts would be undertaken to secure evidence from Dr. Dreibelbis, either in writing or by way of testimony, before a decision was made. It is manifestly unfair to have issued a decision without such efforts being pursued.

■ The Secretary has argued that it is not enough to show that the ALJ failed to develop a full record; instead, asserts the Secretary, the claimant must show "that the outcome of her case might reasonably have been different if she had elected to be represented by an attorney." (Brief in Support of Secretary's Motion for Summary Judgment (Dkt. Entry No. 11) at p. 12.) No such requirement, however, can be discerned from the pertinent case law. On the contrary, cases have been remanded in order to more fully develop the record without requiring the claimant to make a specific proffer of the evidence that would be presented to the ALJ on remand.

For example, in *Coulter v. Weinberger*, 527 F.2d 224 (3rd Cir.1975), as in the instant matter, the claimant's insured status had expired many years prior to the filing of an application for benefits. As in the instant matter, there were significant evidentiary gaps in the record, including, in particular, medical information that the ALJ had failed to pursue. The Third Circuit did not require the claimant to produce that information for review by the court. Instead, the Third Circuit remanded the case because, in its view, the absent records *"might* be expected to yield some data helpful to determine [the claimant's] conditions . . . ." 527 F.2d at 230 (emphasis added). *See also, Walsh v. Heck-*

*ler,* 608 F.Supp. 500, 501 (E.D.Pa.1985) (remanding matter to the Secretary where the ALJ failed to develop a complete record on the question of a disabling condition covering a period of time years prior to the filing of the application for benefits).

Similarly, in *Dobrowolsky, supra,* the Third Circuit did not require an offer of proof as a condition for a remand where the ALJ had not adequately developed the record. And, in *Hess,* a remand was ordered even though the claimant did not show that the information the ALJ had failed to develop would have resulted in a different outcome. 497 F.2d at 840–41. As explained in *Clark v. Schweiker,* 652 F.2d at 404, "we are not required to determine that the presence of counsel would necessarily have resulted in any specific benefits in the handling of the case before the ALJ."

Requiring a judicial determination of a likelihood of prevailing could preempt the Secretary's authority to make disability determinations in the first instance. Moreover, requiring a claimant to establish a probability of success as a condition for remand is inconsistent with the deference that must be accorded the Secretary's final ruling on remand. *Cf., Erwin v. Secretary of Health, Education & Welfare,* 312 F.Supp. 179, 185–86 (D.N.J.1970) (a remand ordered because the ALJ failed to develop a complete record on a *pro se* claimant's application for disability insurance benefits was not intended to suggest that the Secretary award benefits). In short, "good cause" to order a remand under 42 U.S.C. § 405(g) is established where, as here, the ALJ has failed to exercise his authority to attempt to fill significant evidentiary gaps that are material to the disability determination. *Cf., Saldana v. Weinberger,* 421 F.Supp. 1127, 1131 (E.D.Pa. 1976) ("good cause" warranting a remand present where ALJ fails to assist unrepresented claimant in the presentation of evidence of disabling condition before insured status had expired).[12]

---

12. A remand would not be warranted where it is clear that the claimant could not possibly establish entitlement to benefits or the "evidentiary gap" is not material to the disability determination. Thus, for example, *Ware v. Schweiker,* 651

F.2d 408 (5th Cir.1981), cited by the Secretary, is distinguishable from this case because the Fifth Circuit concluded that "no further findings *could* be made that would alter the ALJ's determina-

In this case, testimony of Drs. Dreibelbis and/or Adams may produce evidence helpful to decide the difficult question of whether Jozefick was unable to engage in gainful employment prior to 1982. Indeed, these physicians may be able to produce information necessary to support a finding that Jozefick's condition met the requirements for a listed impairment. This possibility is sufficient to warrant a remand.[13]

Evidence other than the testimony of Drs. Dreibelbis and/or Adams may also be helpful to a determination of whether Jozefick was disabled prior to 1982. Such evidence could consist of testimony from other family members, friends and/or co-workers. The ALJ did not attempt to develop evidence along these lines and did not inform Jozefick of her right to present such evidence. Furthermore, a structured presentation of testimony, as opposed to the informal manner in which the ALJ conducted the hearing in this case, may elicit more complete information of Jozefick's condition prior to 1982.[14]

### III. CONCLUSION

"[A] showing that the ALJ failed to fully develop the record by not eliciting all of the relevant information is a showing of prejudice to the claimant and a cause for remand." *Hawwat v. Heckler*, 608 F.Supp. 106, 109

(N.D.Ill.1984). In this case, the ALJ did not discharge his obligation to develop the record completely. Accordingly, this matter will be remanded to the Secretary for a new hearing at which Jozefick will be afforded the opportunity to subpoena Drs. Dreibelbis and Adams and present other evidence relevant to her ability to engage in gainful employment during the period April 30, 1979 through December 31, 1981.

An appropriate Order will be issued.

---

tion...." *Id.* at 412 (emphasis added). Such a conclusion is not warranted here.

13. None of the cases cited by the Secretary require a claimant to establish a reasonable likelihood of prevailing as a condition for remand. In *Gachette v. Weinberger*, 551 F.2d 39 (3rd Cir. 1977), the court found that the lower court's adjudication had not taken into account all pertinent evidence, and remanded the matter to the trial judge. In directing a reconsideration of the case, the appellate court also noted that the claimant had argued that the ALJ had failed to satisfy his duty of fully developing the record and the claimant should be allowed to make an offer of proof on this issue. The court did not hold, however, that an offer of proof is a requirement for a remand to the Secretary. In *Hall v. Secretary of Health, Education & Welfare*, 602 F.2d 1372 (9th Cir.1979), another case cited by the Secretary, the court reversed the district court ruling and directed that the matter be remanded to the Secretary because the record did not support the disability determination. In remanding, the court indicated that certain other specific instances of prejudice resulting from the absence of counsel at the administrative proceeding (a

hearing had been waived) did not warrant a remand. *Hall* did not require an offer of proof as a condition of remand, and indeed reversed the district court without requiring the plaintiff to make a proffer on the issue for which the matter was remanded to the Secretary.

14. As the Magistrate Judge correctly observed, the ALJ allowed the hearing to be conducted in an extremely informal manner, with Jozefick's husband continually interrupting her testimony. It appears that the informal manner in which the hearing was conducted was intended to enable the claimant to present as much evidence at the hearing as possible. The ALJ's tolerant attitude towards the claimant and her husband, however, does not satisfy his obligation to insure the development of a complete record. "[T]he ALJ cannot satisfy his 'heightened duty to scrupulously and conscientiously probe into, inquire of, and explore all relevant facts' merely by extending to a *pro se* claimant the opportunity to present relevant evidence." *Losco v. Heckler*, 604 F.Supp. 1014, 1020 n. 4 (S.D.N.Y.1985).