**Douglas W. WALKER, Plaintiff,**

v.

**Larry G. MASSANARI [1], Acting Commissioner of Social Security, Defendant.**

No. 3–00–CV–90226.

United States District Court,
S.D. Iowa,
Davenport Division.

May 7, 2001.

1. Larry G. Massanari became the Acting Commissioner of Social Security on March 29, 2001. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure [Rule 43(c)(2) of the Federal Rules of Appellate Procedure], Larry G. Massanari should be substituted, therefore, for Commissioner Kenneth S. Apfel, or for Acting Commissioner William A. Halter as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

James Kringlen, Legal Services of Iowa, Iowa City, IA, for plaintiff.

Craig P. Gaumer, Assist. U.S. Atty., Des Moines, IA, for defendant.

## ORDER

PRATT, District Judge.

Plaintiff, Douglas Walker, filed a Complaint in this Court on December 11, 2000,

seeking review of the Commissioner's decision to deny his claim for Social Security benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq.* This Court may review a final decision by the Commissioner. 42 U.S.C. § 405(g). For the reasons set out herein, the decision of the Commissioner is reversed and the Commissioner is ordered to award benefits.

Plaintiff applied for benefits January 17, 1991. Tr. at 87–99. Plaintiff was awarded benefits due to mental retardation and asthma. On June 24, 1997, it was determined that Plaintiff's disability ceased on June 15, 1997 and that his benefits were to end effective August 15, 1997. Tr. at 102. After reconsideration, Plaintiff requested a hearing before an Administrative Law Judge. A hearing, at which Plaintiff appeared pro se along with his mother and grandmother, was held May 19, 1998, before Administrative Law Judge Jean M. Ingrassia (ALJ). Tr. at 42–86. The ALJ issued a Notice of Decision—Unfavorable, on July 30, 1998. Tr. At 16–29. The ALJ's decision was affirmed by the Appeals Council of the Social Security Administration on October 27, 2000. Tr. at 6–8. Complaint was filed in this Court on December 11, 2000. On April 17, 2001, Defendant moved to remand the case for further evidentiary proceedings. Plaintiff has neither resisted the motion to remand nor filed a brief as directed by the Court order of March 29, 2001. The Court, therefore, will consider the arguments made by Plaintiff to the Appeals Council (Tr. at 352–56) in which Plaintiff argued that substantial evidence in the record supports a reversal with a reinstatement of benefits. The Court agrees with Plaintiff.

On May 24, 1995, when Plaintiff was 15 years old, he underwent a psychological evaluation at the Mississippi Bend Area Education Agency. On the Wechsler Intelligence Scale for Children—III, Plaintiff scored a Verbal IQ of 64, a Performance IQ of 69, and a Full Scale IQ of 64. Tr. at 224. An earlier evaluation, dated May 24, 1989, when Plaintiff was 9 years old, showed that Plaintiff scored a Verbal IQ of 62, a Performance IQ of 84, and a Full Scale IQ of 71. Tr. at 255. On May 3, 1997, Plaintiff was seen by Owen B. Duffy, IV, Ph.D., for a third psychological evaluation. Tr. at 276–78. This time, Plaintiff scored a Verbal IQ of 71, a Performance IQ of 71, and a Full Scale IQ of 71. Concluding his report, Dr. Duffy wrote: "Although Mr. Walker's IQ falls slightly above the technical range of mild mental retardation, his immaturity and poor judgment suggests this diagnosis." On Axis II of the multiaxial diagnosis, the psychologist diagnosed Mild Mental Retardation. Tr. at 277. Dr. Duffy also wrote: "Mr. Walker will be significantly slower than average in learning new information and in completing even basic tasks. He can communicate fairly well with others, although he is likely to have difficulty following instructions. Mr. Walker should have assistance in managing any benefits he receives." Tr. at 278.

During the Administrative hearing, after Plaintiff, his mother and his grandmother had testified, the ALJ called Barbara Laughlin to testify as a vocational expert. Tr. at 67. The ALJ's hypothetical assumed that Plaintiff has an IQ of 71, that he would be limited to unskilled work, that he has no exertional impairments, but that, because of his asthma, he needs to avoid extremes of heat, cold, and humidity as well as dust, fumes, odors, gas and poor ventilation. Tr. at 67–69. In response, the vocational expert said that Plaintiff could perform jobs such as a coffee maker, labeling machine operator, sandwich maker, hand packager, counter attendant, assembler of small products, plumbing hard-

ware associate, and price marker. Tr. at 69–74.

In her decision, following the sequential evaluation, set forth in the regulations for children and adults (Plaintiff reached his 18th birthday on June 18, 1997), the ALJ found that Plaintiff had never engaged in substantial gainful activity. The ALJ found that Plaintiff's severe impairments were subaverage intellectual functioning, asthma, and a history of lazy eye. The ALJ found that none of the impairments, or combinations of impairments, meet, medically or functionally equal any of the listed impairments found in Appendix 1, Subpart P, Regulations No. 4 (the listings). The ALJ found that there had been medical improvement in Plaintiff's IQ and in his asthma. Tr. at 27. The ALJ found that as of Plaintiff's 18th birthday he has the residual functional capacity "to perform the exertional or nonexertional requirements of work except for employment requiring exposure to extreme conditions of heat, cold, fumes, or dust. He cannot tolerate conditions with poor ventilation. He would be limited to low level unskilled work." The ALJ found that Plaintiff is able to do the types of jobs identified by the vocational expert at the hearing, and that he was, therefore, not disabled. Tr. at 28. The ALJ held that Plaintiff's disability benefits ended on August 15, 1997, and that he was not entitled to benefits after attaining his eighteenth birthday. Tr. at 29.

## DISCUSSION

In *Jozefick v. Shalala*, 854 F.Supp. 342, 343–44 (M.D. Pa. 1994), Judge, now Chief Judge, Vanaskie wrote:

"To arrive at a consensus on the priority to be afforded the matters entrusted to the jurisdiction of the federal courts might be difficult indeed, but few would dispute the premise that claims of those entitled to disability benefits from the Social Security Administration must rank high on the scale of human concern." *Hess v. Secretary of Health, Education & Welfare*, 497 F.2d 837, 838 (3rd Cir.1974). Judicial review in such cases, although necessarily deferential to the agency's determination, must nonetheless be undertaken with a recognition that the "beneficent purposes" underlying the Social Security Act, id. at 840, are best served by insuring that the agency has developed a complete evidentiary record. See *Dobrowolsky v. Califano*, 606 F.2d 403, 406–07 (3rd Cir. 1979).

When, as in this case, a claimant proceeds to a hearing before an Administrative Law Judge ("ALJ") without assistance of counsel, the ALJ has an obligation " 'scrupulously and conscientiously [to] probe into, inquire of, and explore all relevant facts....' " *Smith v. Secretary of Health, Education and Welfare*, 587 F.2d 857, 860 (7th Cir. 1978). *Accord, Smith v. Harris*, 644 F.2d 985, 989 (3rd Cir.1981). Absence of counsel at the administrative hearing not only increases the responsibility of the ALJ, but also requires the court to undertake a searching review of the record to determine that the claimant has received a full and fair hearing. See *Brittingham v. Weinberger*, 408 F.Supp. 606, 611 (E.D.Pa. 1976).

In *Fenton v. Apfel*, 149 F.3d 907, 910–11 (8th Cir.1998), the Court wrote:

The scope of this Court's review is whether the decision of the Secretary in denying disability benefits is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g). *See Lor-*

*enzen v. Chater,* 71 F.3d 316, 318 (8th Cir.1995). Substantial evidence is less than a preponderance, but enough so that a reasonable mind might accept it as adequate to support the conclusion. *Pickney v. Chater,* 96 F.3d 294, 296 (8th Cir.1996). We must consider both evidence that supports the Secretary's decision and that which detracts from it, but the denial of benefits shall not be overturned merely because substantial evidence exists in the record to support a contrary decision. *Johnson v. Chater,* 87 F.3d 1015, 1017 (8th Cir.1996) (citations omitted). When evaluating contradictory evidence, if two inconsistent positions are possible and one represents the Secretary's findings, this Court must affirm. *Orrick v. Sullivan,* 966 F.2d 368, 371 (8th Cir.1992) (citation omitted).

■ In short, a reviewing court should neither consider a claim de novo, nor abdicate its function to carefully analyze the entire record. *Wilcutts v. Apfel,* 143 F.3d 1134, 1136–37 (8th Cir.1998) citing *Brinker v. Weinberger,* 522 F.2d 13, 16 (8th Cir. 1975).

■ In *Muncy v. Apfel,* 247 F.3d 728 (8th Cir.2001), the Court remanded the case to resolve a twenty-five point difference in IQ scores from tests several years apart. The Court wrote that mental retardation is not normally a condition that improves as an affected person ages. *Id.* at 734. Rather, continued the Court, absent evidence of a dramatic upswing in intellectual or adaptive functioning, or a challenge to the validity of the earlier scores, a person's IQ is presumed to be constant throughout his/her life. *Id.* at 734. In the case at bar, there is no evidence, absent the slight improvement in the IQ scores, that Plaintiff's level of intelligence has improved.

Plaintiff urges the Court to consider the five point margin of error presumed by the testing protocol. *See* Diagnostic and Statistical Manual of Mental Disorders (fourth edition, American Psychiatric Association) (DSM—IV) at 39. In the past, this Court has declined to consider the five point margin of error when reviewing a claim that the claimant meets or equal a listed impairment. *See, e.g. Terrel v. Apfel,* 3–97–cv–90153 slip op at 6 and 7 (S.D.Iowa July 13, 1998) *citing Cockerham v. Sullivan,* 895 F.2d 492, 495–96 (8th Cir.1990). In both *Terrel* and *Cockerham,* the record contained expert psychiatric and psychological evidence that, although the claimants scored within a few points of the mild mental retardation range, their actual IQ was well above that classification. In the case *sub judice,* on the other hand, it was the testimony of the psychologist who determined that Plaintiff was one point above the mild mental retardation cutoff point, he should still be considered to be mentally retarded. It must also be remembered that two other tests showed that his IQ was below the required threshold. In this case, therefore, the five point margin of error is a relevant indication of Plaintiff's true level of intelligence which is evidence which detracts from the ALJ's finding that Plaintiff's condition no longer meets a listed impairment.

■ In support of his argument that Plaintiff should be considered disabled and entitled to benefits because of his IQ, counsel cites POMS DI 24515.056D(1)(c). Although the Program Operations Manual Systems is not published in the Federal Register, and does not have the force of law, it is sometimes entitled to persuasive authority in unique situations. *See e.g. List v. Apfel,* 169 F.3d 1148, 1150 (8th Cir.1999). In *Prentice v. Apfel,* 1998 WL 166849, (N.D.N.Y.), the Court, citing the

aforementioned POMS, held that an IQ score of 71, along with other severe impairments equaled a listed impairment entitling the claimant to benefits. The Court, therefore, finds counsel's argument persuasive.

In the case at bar, substantial evidence on the record as a whole supports only one conclusion, namely that Plaintiff's IQ falls in the mildly mentally retarded range in spite of his ability to score 71 in all three scales when tested by Dr. Duffy.

In order to meet or equal the requirements of listing 12.05(C), it is necessary to have an additional severe physical or mental impairment. The ALJ found, and substantial evidence supports, that Plaintiff suffers from asthma. The ALJ also found that the asthma, although well controlled, reduces his residual functional capacity by limiting Plaintiff to employment not requiring exposure to extreme conditions of heat, cold, fumes, dust, or conditions with poor ventilation. In the opinion of the Court, this impairment satisfies the second prong of the listing. *See Sird v. Chater*, 105 F.3d 401, 403 (8th Cir.1997).

Substantial evidence on the record as a whole supports only one conclusion. A combination of Plaintiff's impairments equals, or more likely meets, the requirements of § 12.05(C) of the listings. A remand to take further evidence, therefore, would only delay the receipt of benefits to which Plaintiff is entitled either as a disabled child or as an adult. In such circumstances, a reversal with an award of benefits is the appropriate remedy.

### CONCLUSION AND DECISION

The Court holds that Commissioner's decision is not supported by substantial evidence on the record as a whole. The Court finds that the evidence in this record is transparently one sided against the Commissioner's decision. *See Bradley v. Bowen*, 660 F.Supp. 276, 279 (W.D.Ark. 1987). The medical evidence, along with the findings of the ALJ, establish that Plaintiff's impairments meet or equal a listed impairment. Plaintiff, therefore, is entitled to a finding of disability at the third step of the sequential evaluation. A remand to take additional evidence would only delay the receipt of benefits to which Plaintiff is clearly entitled. Therefore, reversal with an award of benefits is the appropriate remedy. *Parsons v. Heckler*, 739 F.2d 1334, 1341 (8th Cir.1984).

Defendant's motion to remand the case to take further evidence is denied. **This cause is remanded to the Commissioner for computation and payment of benefits.** The judgment to be entered will trigger the running of the time in which to file an application for attorney's fees under 28 U.S.C. § 2412(d)(1)(B) (Equal Access to Justice Act). *See Shalala v. Schaefer*, 509 U.S. 292, 113 S.Ct. 2625, 125 L.Ed.2d 239 (1993). *See also, McDannel v. Apfel*, 78 F.Supp.2d 944 (S.D.Iowa 1999), and LR 54.2(b).

IT IS SO ORDERED.