Matthew GAUTHNEY

v.

Donna SHALALA Secretary of Health and Human Services.

Civ. A. No. 94–1233.

United States District Court,
E.D. Pennsylvania.

Feb. 24, 1995.

Meyer Silver, Silver & Silver, Bala Cynwyd, PA, Steven M. Rollins, Silver & Silver, Bala Cynwyd, PA, for plaintiff.

Dorothea J. Lundelius, Charlotte J. Hardnett, U.S. Dept. of Health and Human Services, Office of Gen. Counsel, Region III, Philadelphia, PA, for defendant.

## ORDER

BECHTLE, Senior District Judge.

AND NOW, this 24th day of February, 1995, upon careful and independent consideration of the parties' cross motions for summary judgment, and after reviewing United States Magistrate Judge Thomas J. Rueter's Report and Recommendation, it is hereby ORDERED that:

1. The Report and Recommendation is APPROVED and ADOPTED;

2. Plaintiff's motion for summary judgment is GRANTED;

3. Defendant's Motion for summary judgment is DENIED; and

4. The case is REMANDED in accordance with the fourth sentence of 42 U.S.C. § 405(g) to the Secretary of Health and Human Services for further proceedings consistent with the Report and Recommendation of United States Magistrate Judge Rueter.

## REPORT AND RECOMMENDATION

RUETER, United States Magistrate Judge.

Plaintiff commenced this action under the Social Security Act ("Act"), 42 U.S.C. § 405(g), requesting a review of the denial of his claim for supplemental security income benefits by the Secretary of Health and Human Services ("Secretary"). Both parties have filed cross motions for summary judgment. For the following reasons, I recommend that the Secretary's motion be DENIED and the Plaintiff's motion be GRANTED and the case be REMANDED to the Secretary for further administrative proceedings.

## I. FACTS AND PROCEDURAL HISTORY

The plaintiff, born on March 27, 1951, is a forty-three year old male. (R. 42, 46, 61). He is a high school graduate and his past relevant work was as a painter and carpenter. (R. 19, 73). The plaintiff alleges disability as of June 5, 1991, due to an injury to his right hand. (R. 19, 42, 46, 61, 69–76).

The plaintiff filed an application for supplemental security income benefits on January 7, 1992, due to the loss of the fingertips on his right hand from a firecracker accident. (R. 42–44). This application was denied by initial determination on May 6, 1992. (R. 55–58). A request for reconsideration of the denial of supplemental security income benefits was made by the plaintiff on May 28, 1992, and on June 19, 1992, the Secretary upheld the previous decision. (R. 59–64). The plaintiff then filed a request for a hearing before an Administrative Law Judge ("ALJ") on August 14, 1992, and on January 6, 1993, a hearing was held before ALJ Samuel Dantoni. (R. 26, 29–41, 65–66). The ALJ denied plaintiff's claim in a decision dated September 8, 1993, finding him able to perform a limited range of light work that existed in significant numbers in the national economy, and thus, not disabled under the Social Security Act. (R. 19–23). The ALJ made the following findings:

1) The claimant has not engaged in substantial gainful activity since June 5, 1991.

2) The medical evidence establishes that the claimant has severe status post injury to [his] right hand, but that he does not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4.

3) The claimant's testimony concerning his ability to perform "odd jobs" and lack of treatment for his right hand, is considered credible when viewed the light of the record in its entirety.

4) The claimant has the residual functional capacity to perform the physical exertion requirements of work except for fine manipulation of the right hand. There are no nonexertional limitations (20 C.F.R. § 416.945).

5) The claimant is unable to perform his past relevant work as a painter/carpenter.

6) The claimant has the residual functional capacity to perform a limited range of "light" work (20 C.F.R. § 416.967).

7) The claimant is 41 years old, which is defined as a "younger individual" (20 C.F.R. § 416.963).

8) The claimant has a twelfth grade education (20 C.F.R. § 416.964).

9) The claimant has acquired work skills, such as reading building diagrams/plans/blueprints. Building according to specifications. Layout of work to be performed. Estimating quantity and type of building materials required. Knowledge and use of building trade tools (hand and power) to cut, erect, repair, and paint. Knowledge and skill to install electrical fixtures, plumbing fixtures. Interpersonal communication skills with public/customers. Knowledge of building equipment, machinery, electrical and plumbing components which he demonstrated in past work. Considering his residual functional capacity, these skills can be applied to meet the requirements of semi-skilled work activities of other work which exists in significant numbers in the national economy (20 C.F.R. § 416.968). Examples of such jobs are salesperson/parts. Counter clerk. Inspector. Building inspector. These jobs are noted to exist in the national economy in significant numbers ranging from sixty thousand to two million six hundred thousand.

10) Section 416.969 of Regulations No. 16 and Rule 202.22, Table No. 2 of Appendix 2, Subpart P, Regulations No. 4, direct a conclusion that the claimant, considering residual functional capacity, age, education, and work experience, is not disabled.

11) The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 C.F.R. § 416.920(f)). (R. 22–23).

Plaintiff filed a request for review of the decision of the ALJ on September 16, 1993. (R. 7–15). The Appeals Council determined that there was no basis, under the applicable regulations, statutes, and rulings, for granting plaintiff's request for review. Therefore, the decision of the ALJ became final pursuant to 20 C.F.R. § 404.981.

In his motion for summary judgment, plaintiff contends that the ALJ's findings are contrary to the record and to applicable social security law. Plaintiff argues that the injury to his right hand was sufficient to support a finding of disability and award supplemental security income benefits. As a result, plaintiff asserts that his motion should be granted, the defendant's judgment reversed and the claim remanded to the Secretary for further administrative proceedings in order to award supplemental security income benefits commencing on June 5, 1991. (Plaintiff's Brief, pp. 13–14).

## II. *STANDARD OF REVIEW*

The role of this Court is to determine whether there is substantial evidence in the record to support the decision of the Secretary. *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir.1988). Substantial evidence has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938)). Substantial evidence is "more than a mere scintilla of evidence, but may be less than a preponderance." *Woody v. Secretary of*

*Health and Human Services,* 859 F.2d 1156, 1159 (3d Cir.1988). This Court may not "weigh the evidence nor substitute its conclusions for those of the factfinder." *Williams v. Sullivan,* 970 F.2d 1178, 1182 (3d Cir. 1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1294, 122 L.Ed.2d 685 (1993). The ALJ's conclusions must be accepted unless they are without basis in the record and his judgment on these matters should be given great weight. *Lyons v. Heckler,* 638 F.Supp. 706, 711 (E.D.Pa.1986).

To be eligible for disability insurance benefits under the Social Security Act, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 42 U.S.C. § 423(d)(1)(A). The impairments must not only prevent him from performing previous work, but be of "such severity that (the person) ... cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

■ The claimant bears the burden of proving disability. *Podedworny v. Harris,* 745 F.2d 210, 217 (3d Cir.1984). A claimant may make a showing of disability in one of two ways: (1) by introducing medical evidence that he suffers from one or more of the serious impairments delineated in 20 C.F.R. Part 404, Subpart P, Appendix 1 (1993); or (2) by demonstrating that although he does not suffer from a listed impairment, the injury is still "severe enough that he · cannot engage in any 'substantial gainful work which exists in the national economy.' " *Brown v. Bowen, supra* at 1213–14 (*quoting* 42 U.S.C. § 423(d)(2)(A)).

■ One seeking benefits under this second method must demonstrate that he is unable to return to his former job because of a physical and mental impairment. Once the claimant has met this standard, "the burden shifts to the Secretary to show that there is another kind of substantial gainful employment that the individual is able to perform." *Allen v. Bowen,* 881 F.2d 37, 39–40 (3d Cir. 1989); *Brown v. Bowen, supra* at 1214. The Secretary should consider such factors as claimant's physical ability, age, education, and work experience. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f).

The Secretary decided this matter using the five (5) step sequential evaluation process, established by the Department of Health and Human Services, to determine whether a person is disabled. *Bowen v. Yuckert,* 482 U.S. 137, 140–42, 107 S.Ct. 2287, 2290–91, 96 L.Ed.2d 119 (1987). The process requires the Secretary to consider, in sequence, whether a claimant: (1) is currently employed; (2) has a severe impairment; (3) has an impairment which meets or equals the requirements of a listed impairment; (4) can perform past relevant work; and (5) if not, whether the claimant is able to perform other work, in view of his age, education, and work experience. 20 C.F.R. § 416.920(b)-(f).

In the instant case, the Secretary found the plaintiff not disabled at the fifth step of the sequential process (20 C.F.R. § 416.920(f)) because he had "the residual functional capacity to perform a limited range of 'light' work." (R. 22). Further, plaintiff acquired work skills that could be applied to a significant number of "semi-skilled" vocations which exist in the national economy. (R. 22–23).

### III.  *DISCUSSION*

#### A.  Medical Evidence

On June 14, 1991, about one week after the firecracker accident, plaintiff went to have his injured right hand examined by Dr. Alan E. Hibberd.[1] (R. 88). Dr. Hibberd reported that plaintiff "had a comminuted fracture[2] of

---

1. The progress notes from Dr. Hibberd refer to the plaintiff by his Muslim name, Sabur Abdul–Matin. (R. 81–88).

2. *Comminuted fracture:* Broken or smashed into small pieces. *Dorland's Illustrated Medical Dictionary,* 363 (27th ed. 1988).

the first phalanx[3] of the thumb, loss of the third phalanx, index finger, and partial loss of the third and fourth fingers." (R. 88). There were no signs of infection and antibiotics improved his condition. The only treatment that the physician deemed necessary was a whirlpool program. (R. 88).

A week later, on June 19, 1991, Dr. Hibberd noted that plaintiff's hand was "much better." (R. 87). Soaking and range of motion treatment was recommended, as well as occupational therapy, on June 26, 1991. (R. 86). Dr. Hibberd stressed that a home program could alleviate his symptoms. However, he believed that the plaintiff had "an extremely low tolerance to discomfort." (R. 86).

Plaintiff's steady improvement was reported on July 3, 1991, although he needed work on his "composite" motion. (R. 85). Yet on July 10, 1991, a week after his last visit, plaintiff exhibited good range of motion in his third, fourth, and fifth fingers, and sixty (60) degrees of motion in his second finger. (R. 84). Dr. Hibberd reported on July 19, 1991, that the motion in plaintiff's fourth and fifth fingers was "excellent." The second and third fingers required a little more work, but plaintiff continued to improve. (R. 83). Additionally, Dr. Nancy Goldenberg examined plaintiff on this date and noted that he had "marked disuse osteopenia[4], particularly in the periarticular regions."[5] However, the changes in his hand were consistent with the previous trauma and surgery. (R. 82).

In his final report on August 8, 1991, Dr. Hibberd indicated that plaintiff was "gradually improving in his range of motion." (R. 81). The physician wanted to debride[6] some crust on the tips of plaintiff's fingers, as well as an area of hypertrophic granulation[7] on the fourth finger, so as not to compromise the healing process. However, plaintiff expressed his reluctance and desired to handle this on his own. (R. 81). Dr. Hibberd concluded that the plaintiff indicated that he would be applying for disability, but the physician provided no formal diagnosis to support such a claim. (R. 81).

Plaintiff sought orthopedic treatment from the Veterans Administration Hospital from January 8, 1992 until February 28, 1992.[8] (R. 90–95). The attending physician reported that plaintiff had "no use for fine motor or precision pinch due to limited motion, weakness, and poor sensation" and "very limited power grasp." (R. 90). Plaintiff was restricted to holding light objects (less than two pounds) in his right hand. The doctor felt that use of the hand was "limited," but plaintiff "would gain very little from surgery." (R. 90–91).

A consultative examination of the plaintiff was held by Dr. Richard Bennett, on February 9, 1993, for the Pennsylvania Bureau of Disability. (R. 96–102). There was evidence of amputation of the distal portions of the thumb, second and third fingers. There was decreased sensation, strength, and motor control in tips of these three fingers. Plaintiff had difficulty manipulating small objects and could not pick up items, such as coins, nails, and pins with his thumb. However, plaintiff still had normal strength, sensation and reflexes in his right hand. There were no musculoskeletal problems. Dr. Bennett noted that "[n]eurologically there is a minor diminished primary sensory function in the tips of these fingers, but otherwise neurologically he is intact." (R. 96). Plaintiff experienced no excessive or unusual pain. Al-

---

3. *Phalanx:* Any of the bones of the fingers or toes. *Dorland's Illustrated Medical Dictionary,* 1270 (27th ed. 1988).

4. *Osteopenia:* A decrease in bone mass that is below the normal. *Dorland's Illustrated Medical Dictionary,* 1200 (27th ed. 1988).

5. *Periarticular regions:* Areas situated around the joint. *Dorland's Illustrated Medical Dictionary,* 1256 (27th ed. 1988).

6. *Debride:* Remove foreign material and contaminated or devitalized tissue, usually by sharp dis-

section. *Dorland's Illustrated Medical Dictionary,* 434 (27th ed. 1988).

7. *Hypertrophic granulation:* The enlargement or overgrowth of granules, the small beadlike masses of tissue formed on the surface of wounds. *Dorland's Illustrated Medical Dictionary,* 715, 800 (27th ed. 1988).

8. The progress notes from the Veterans Administration Hospital were handwritten and as a result, a substantial amount of their contents were illegible. (R. 90–95).

though he had improved, full function had not returned to his hand and Dr. Bennett felt that this injury had permanent "disability effect." The physician concluded that plaintiff would need to be re-trained in order to work. (R. 96–97).

### B. Plaintiff's Testimony 1/6/93

Plaintiff, who had no representation at the administrative hearing, testified that he blew off the tips of his fingers from a firecracker accident while on vacation in Haiti in 1991. (R. 31, 34–35, 39). He was previously employed as a painter and carpenter, but the injury reduced him to performing odd jobs, such as cleaning basements and shampooing floors. (R. 33–34). He was divorced, lived with his sister, and had no steady income. (R. 32).

As a result of his injury to the right hand, plaintiff did not have the dexterity to handle the tools of his trade and hindered his ability to perform odd jobs. The hand swelled and ached. (R. 35). The plaintiff testified that the muscles and tendons in his right hand were fused and doctors felt that attempts to "loosen the tendons" would be futile. (R. 39). However, as of his last visit to a physician in August or September of 1992, he did not need medication, and the extent of his treatment was physical therapy, which could be done at home. (R. 37).

As to his physical capabilities, plaintiff could maintain his daily hygiene, visit family and friends, and solicit work. He read and watched television. Dressing was difficult because he could not fasten a button with his right hand. However, plaintiff still used his right hand to grab and grasp objects. Finally, plaintiff maintained that he was mentally active. (R. 38–39).

### C. Interrogatories of the Vocational Expert, Gerald L. Oginbene

The interrogatories of the vocational expert, who did not testify at the administrative hearing, were admitted to the record and described plaintiff's past relevant work as a painter and carpenter as skilled, medium range work. (R. 113). The plaintiff possessed the ability to read building diagrams and blueprints, erect a structure according to specifications, estimate the necessary quantity and type of building materials, communicate with the public, and use tools of the trade. (R. 113). However, the expert noted that plaintiff's right hand ailment limited his marketability as a carpenter/painter. (R. 113).

The vocational expert believed that plaintiff, despite a right hand impairment which hindered his dexterity and abilities to reach, feel, handle, push and pull, had the residual functional capacity to perform a limited range of light work, such as a salesperson, parts inspector, and building inspector. These vocations would utilize plaintiff's skills and prior work experience. (R. 115–16). Salesperson positions, such as a counter clerk in a paint, hardware, and plumbing supply store, offered 2,600,000 jobs in the national economy. There were 668,000 inspector positions which were applicable to any industry (e.g. industrial, equipment, electronics, and transportation), and entailed monitoring machine parts, verifying dimensions of materials, and comparing the products with the inventory list. Finally, there were 60,000 building inspector jobs that existed in the national economy. In his expert opinion, Gerald Oginbene believed plaintiff's ability to perform these tasks would not be affected by his hand limitations. (R. 117).

### D. ALJ's Findings

The Administrative Law Judge found, from the evidence, that plaintiff had a comminuted fracture of the first phalanx of the thumb, loss of the third phalanx of the index finger, and partial loss of the third and fourth fingers. There was also evidence of marked disuse osteopenia of the hand and wrist. As a result, plaintiff had not been gainfully employed since June 5, 1991. (R. 19–20). Although he was deemed unfit to perform his past relevant work, the ALJ determined that plaintiff had the residual functional capacity to perform a limited range of light work.[9] (R. 22). As a result,

---

9. *Light work:* "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be

the ALJ found that plaintiff's impairments, although considered severe, did not meet the standards for disability and, accordingly, denied plaintiff any benefits. (R. 22–23).

### E. Review and Analysis

■ The record demonstrates, without dispute, that plaintiff suffered from a comminuted fracture of the first phalanx of the thumb, loss of the third phalanx of the index finger, and partial loss of the third and fourth fingers. The issue before this Court is whether the Secretary has met her burden of proving that plaintiff was capable of performing a limited range of light work despite his infirmities. After a careful review of the entire record, the Court concludes that the record, as compiled by the ALJ, cannot support the finding that the plaintiff retained the residual functional capacity to perform a limited range of light work. The record was inadequate for two reasons. First, the ALJ did not give plaintiff the required notice that he was entitled to a supplemental hearing to cross-examine the vocational expert on his answers to the post-hearing interrogatories. Second, the ALJ failed to adequately develop the record in light of plaintiff's lack of legal representation. Accordingly, the Court recommends that plaintiff's motion for summary judgment be granted and the matter be remanded to the Secretary.

### 1. Plaintiff Was Not Properly Advised Of His Right To A Supplemental Hearing To Challenge Post–Hearing Evidence

■ The Secretary is mandated by statute to determine disability "on the basis of evidence adduced at the hearing." 42 U.S.C. § 405(b)(1). The administrative hearing is subject to considerations of due process. *Richardson v. Perales*, 402 U.S. 389, 401–02, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Reliance by the ALJ on a post-hearing re-

port constitutes a violation of due process when the claimant is unable to cross-examine the author of that report. *Wallace v. Bowen*, 869 F.2d 187, 193 (3d Cir.1989); *Johnson v. Bowen*, 699 F.Supp. 475, 480–81 (E.D.Pa. 1988) (McGlynn, J.). In *Wallace*, the Third Circuit held that:

> when an administrative law judge chooses to go outside the testimony adduced at the hearing in making a determination on a social security claim, the ALJ must afford the claimant not only the opportunity to comment and present evidence but also an opportunity to cross-examine the authors of any post-hearing reports when such cross-examination is necessary to the full presentation of the case, and must reopen the hearing for that purpose if requested.

*Wallace v. Bowen, supra* at 193. As a result, the form letter from the ALJ to plaintiff, advising him of the additional evidence to be considered, must "give notice that the claimant may request a supplementary hearing at which the claimant may cross-examine the authors of any post-hearing reports submitted by the Secretary." *Id.*

Here, the March 4, 1993 correspondence from the ALJ failed to advise the plaintiff of his right to a supplemental hearing at which he could cross-examine the vocational expert as to his post-hearing interrogatories. (R. 103). Although the ALJ informed the plaintiff of the right to a supplemental proceeding, to be awarded at his discretion, the ALJ merely noted that the purpose was "for a full and true disclosure of the facts." (R. 103). Further, the notice stated plaintiff was only permitted to provide written comments on the post-hearing evidence, provide a brief with pertinent law and facts, or submit additional evidence not previously provided.[10] (R. 103). Finally, there was no language in the notice letter which advised the plaintiff that he had the right to subpoena the voca-

---

very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she could also do sedentary work, unless there are additional factors such as the loss of

fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

**10.** The March 4, 1993 letter from the ALJ relied upon the notice requirements of *Wallace v. Bowen*, 855 F.2d 101 (3d Cir.1988). However, this decision was modified upon rehearing. *See Wallace v. Bowen*, 869 F.2d 187 (3d Cir.1989).

tional expert to another hearing.[11] *See Wallace v. Bowen, supra* 869 F.2d at 193. Plaintiff, who was unable to obtain legal representation for the administrative hearing, could not have known from the ALJ's letter that he possessed the right subpoena and cross-examine witnesses. Having failed to advise plaintiff of this right, it would be fundamentally unfair to accept the Secretary's contention that plaintiff waived it. "Waiver of the right to subpoena and cross-examine witnesses concerning post-hearing evidence must be 'clearly expressed or strongly implied from the circumstances.'" *Id. (quoting Lonzollo v. Weinberger,* 534 F.2d 712, 714 (7th Cir.1976)). In view of the inadequate notice to the plaintiff of the option to subpoena the vocational expert and his lack of counsel, plaintiff did not have the kind of reasonable notice that could serve as the predicate for a valid waiver. In fact, the Secretary, in *Wallace,* acknowledged that it would be unfair to find a waiver if a claimant were unrepresented. *Wallace v. Bowen, supra* 869 F.2d at 193. Therefore, without a full and complete explanation of the rights and privileges to which he was entitled, the court cannot find plaintiff's waiver of the right to cross-examination.

■ Finally, the vocational expert's report, which contained an evaluation of plaintiff's residual functional capacity, was essential to the ALJ's determination. Where the claimant only suffers from an exertional impairment, the Secretary's burden can be met by applying the Medical–Vocational Guidelines under 20 C.F.R. Part 404, Subpart P, Appendix 2. However, where nonexertional limitations must be considered, such as the lack of motor capacity and dexterity, or the presence of pain, the grids may not be applied mechanically by the Secretary and other supporting evidence must be admitted into the record. *Green v. Schweiker,* 749 F.2d 1066, 1071–72 (3d Cir.1984). A vocational expert is necessary when plaintiff's nonexertional impairments must be evaluated, either alone or in connection with any exertional ailments. *Santise v. Schweiker,* 676 F.2d 925, 934–35 (3d Cir.1982) (*citing* 20 C.F.R. Part 404, Subpart P, Appendix 2, Section 200.00(e)).

■ Here, although the ALJ concluded that plaintiff had *no* nonexertional limitations (R. 22–23, No. 4), plaintiff suffered from a lack of dexterity and limited ability to reach and handle objects in his right hand. Further, plaintiff had severe manipulative restrictions. (R. 96–102). These limitations are clearly categorized as nonexertional, pursuant to 20 C.F.R. § 416.969a(c)(vi).[12] Therefore, the ALJ could not rely on the "grids" of the Medical–Vocational Guidelines and had to supplement the record through the testimony and reports of the vocational expert. However, there was no vocational expert at the administrative hearing and plaintiff was not informed of his right to confront this expert. Yet the ALJ relied on the post-hearing interrogatories of the vocational expert to determine that plaintiff had the residual functional capacity to perform a limited range of light work and thus, deny supplemental security income benefits. Accordingly, the judgment of the Secretary must be vacated and the matter remanded to the Secretary for a supplemental hearing to

---

**11.** There are two (2) notice letters from the ALJ in the record, on March 4, 1993 and August 9, 1993, which refer to the admittance of additional evidence. (R. 103, 118). Neither letter makes a specific reference to the proposed evidence that the ALJ wished to add to the record. As explained above, the March 4, 1993 correspondence does not meet the notice requirements for post-hearing evidence. The August 9, 1993 letter from the ALJ to the plaintiff only mentions that the additional reports to be considered were enclosed and that plaintiff could submit written responses if he wished. (R. 118). The right to a supplementary hearing, where plaintiff could subpoena and cross-examine witnesses, was not mentioned. As a result, both notice letters were inadequate under the Third Circuit's *Wallace* standards.

**12.** *Nonexertional limitations :* "When the limitations and restrictions imposed by your impairment(s) and related symptoms, such as pain, affect only your ability to meet the demands of jobs other than the strength demands, we consider that you have only nonexertional limitations or restrictions. Some examples of nonexertional limitations or restrictions include ...

(vi) You have difficulty performing the manipulative or postural functions of some work such as reaching, handling, stooping, climbing, crawling, or crouching."
20 C.F.R. § 416.969a(c)(vi).

allow the plaintiff his right to cross-examine the vocational expert.

### 2. The ALJ Failed To Adequately Develop The Record In Light of Plaintiff's Lack Of Legal Representation

■ "There is no constitutional right to counsel in a social security disability hearing." *Jozefick v. Shalala*, 854 F.Supp. 342, 347 (M.D.Pa.1994) (*citing Holland v. Heckler*, 764 F.2d 1560, 1562 (11th Cir.1985) (per curiam)). However, the claimant does have a statutory and regulatory right to have counsel at such a hearing. 42 U.S.C. § 406; 20 C.F.R. §§ 404.1700–404.1707. The claimant's lack of legal representation, when knowingly and voluntarily waived, is not, of itself, cause for remand. *Livingston v. Califano*, 614 F.2d 342, 345 (3d Cir.1980); *Dobrowolsky v. Califano*, 606 F.2d 403, 407 (3d Cir.1979). In either case, "the ALJ must take a 'heightened level of care' and 'assume a more active role' in the development of the record." *Jozefick v. Shalala, supra* at 347 (*quoting Smith v. Harris*, 644 F.2d 985, 989 (3d Cir. 1981)). "[I]f it is clear that the lack of counsel prejudiced the claimant or that the administrative proceeding was marked by unfairness due to lack of counsel, this is sufficient for remand...." *Livingston v. Califano, supra* at 345.

■ A court can find a proceeding unfair where the ALJ does not develop a complete record. *Id.* The essential inquiry is whether the incomplete record reveals evidentiary gaps which result in prejudice to the claimant. *Jozefick v. Shalala, supra* at 348. If the ALJ failed to fill these evidentiary gaps, "good cause" for remand is established. *Saldana v. Weinberger*, 421 F.Supp. 1127, 1131 (E.D.Pa.1976) (Higginbotham, J.).

Here, the ALJ provided the plaintiff with sufficient notice of his right to secure an attorney in the Notice of Hearing form and in an October 28, 1992 correspondence. (R. 27–28). In the October letter, ALJ Samuel Dantoni advised the plaintiff of the benefits of securing counsel for the administrative hearing and the need to obtain a lawyer as soon as possible. (R. 28). Further, the ALJ provided a list of organizations which could aid plaintiff in locating a lawyer and mentioned that some private attorneys may take

his case without a fee unless the claim is allowed. (R. 28). Finally, at the administrative proceeding, plaintiff mentioned that he could not secure an attorney and had no choice but to represent himself. (R. 31). Therefore, given plaintiff's high school education and the absence of an intellectual or emotional ailment, the ALJ could accept the plaintiff's decision to represent himself as an effective waiver of his right to counsel.

■ However, the ALJ failed to comply with his heightened duty to develop the record in the absence of legal guidance for the plaintiff. The ALJ failed to elicit testimony as to plaintiff's capabilities, such as lifting, reaching, handling, pushing and pulling. There were no questions to the amount of sitting, standing, and walking that plaintiff could perform. Plaintiff was not asked how much weight he could lift, specifically with the impaired hand. Although plaintiff testified that he had trouble grasping things, additional inquiry should have been done into the details of plaintiff's functional limitations. (R. 40). Plaintiff made references to the deformity of his fingers and stated that there was a "hole there so you can see the muscles." (R. 39). After this vague testimony, the ALJ never probed further into the condition of the hand, it's flexibility, and if there was pain and swelling after minimal movement. Finally, the ALJ gave little or no regard to the conclusion by Dr. Bennett that the plaintiff's hand deformity had "permanent disability effect." (R. 96–97).

The most telling omission from the record was that the plaintiff did not have an opportunity to subpoena and cross-examine the vocational expert. As discussed previously, the notice letter pertaining to the post-hearing interrogatories by the vocational expert failed to include any information concerning the plaintiff's right to confront the author of this post-hearing report. This fundamental denial hindered the plaintiff from questioning the vocational expert as to which of his skills were transferable and whether the hypothetical situations used by the ALJ were accurate in terms of plaintiff's exertional and nonexertional limitations. (R. 111–17).

It is not necessary for the court "to determine whether the presence of counsel would necessarily have resulted in any specific benefits in the handling of the case before the ALJ." *Jozefick v. Shalala, supra* at 349 (*quoting Clark v. Schweiker,* 652 F.2d 399, 404 (5th Cir.1981). However, in the *Livingston* and *Dobrowolsky* cases, *supra,* the Third Circuit held that the ALJ must take a more heightened and active role when the claimant is unrepresented, 606 F.2d at 407; 614 F.2d at 345. In sum, the ALJ's failure to fulfill his "heightened duty" to clarify the evidentiary gaps in the record, and notify plaintiff of his right to cross-examine the expert at a supplemental hearing, warrants a remand to the Secretary for further administrative proceedings to clarify the record.

## IV. *CONCLUSION*

For the foregoing reasons, the Court respectfully recommends that the decision of the Secretary be reversed and this case remanded to the Secretary: (1) to provide the plaintiff with a supplemental proceeding in order to cross-examine the vocational expert as to the conclusions in his post-hearing interrogatories and (2) to have the ALJ fill in the gaps of the record in accordance with the heightened duty of care required when a claimant is not represented by counsel.

Accordingly, I make the following:

## *RECOMMENDATION*

AND NOW, this 15th day of November, 1994, it is respectfully RECOMMENDED that the plaintiff's Motion for Summary Judgment be GRANTED and the Secretary's decision be REVERSED and the case REMANDED [13] to the Secretary of Health and Human Services. It is further recommended that defendant's Motion for Summary Judgment be DENIED.

---

**13.** Since plaintiff in his Motion for Summary Judgment requests a reversal of the Secretary's decision with a remand for further proceedings, the Court recommends that the Motion for Summary Judgment be granted and judgment be entered in plaintiff's favor. *See Shalala v. Schaefer,*

— U.S. ——, ——, 113 S.Ct. 2625, 2629, 125 L.Ed.2d 239 (1993) (42 U.S.C. § 405(g) does not authorize the district court to enter a remand order "with or without" a judgment.) *See also Kadelski v. Sullivan,* 30 F.3d 399, 401 (3d Cir. 1994).